FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2012 AUG 10 A 9:29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

KURT MUELLER, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:12cv632 (CMH/TCB)
)
UNITED STATES NATIONAL PARK )
SERVICE, et al., )
)
Defendants. )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF PLANTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

Wolf Trap National Park for the Performing Arts ("Wolf Trap") is a constituent member of the United States National Park Service. As such, Wolf Trap may only promulgate those rules and polices which are within the authority of the Park Service generally.

Wolf Trap's policy prohibiting firearms within the lawn seating area of the Feline Center is not consistent with the plain statutory text of 18 USC §930. Any supplemental authority Wolf Trap might have had in the past to unilaterally augment this statute has been removed by Congress by the Credit Card Accountability and Disclosure Act of 2009, codified at 16 USC §1a-7b. Wolf Trap's interpretive regulation is therefore directly in conflict with the intent of Congress.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff adopts, with one exception, the statement of undisputed facts as provided in Defendants' memorandum in support for summary judgment. The only exception is Defendants' statement that "the Lawn Seating [and] Plaza ... are ... integral - and integrated - parts of the theater". Defs.' Mem. Summ. J. 4. Whether or not the lawn seating area and adjacent open air areas are "part" of the "building" that comprises the covered theater is one of the questions of law which is a component of this case, not a question of fact.

The Plaintiff requests the Court make special attention to section IV of the statement of undisputed facts in Defendants' memorandum (pp. 8-10) and Dex 1, attachment B (the aerial photographs of the Filene Center), as these contain the crux of the factual basis that read on the legal issues in dispute.

## SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment in favor of Plaintiff. Plaintiff adopts Defendants' recitation of the standards that apply for summary judgment.

## ARGUMENT

I. **THE PROHIBITION OF FIREARMS FROM THE FILENE CENTER IS NOT CONSISTNET WITH THE PLAIN LANGUAGE OF 18 USC § 930 OR 16 USC § 1a-7b**

Congress has provided a specific time, place, and manner regulation on the ability of persons to possess firearms in several contexts via several statues. One such statute, 18 USC § 930, governs the possession of firearms in federal facilities. In writing the statute, Congress

provided a specific definition of the term "federal facility" to prevent an overbroad reading. A "federal facility" is defined in 18 U.S.C. § 930(g)(1) to mean "a building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties."

As the lawn seating area and plaza are open air environments, they cannot be though of as a building. Therefore, Wolf Trap lacks the authority to invoke 18 U.S.C. § 930(a) in the first instance. Further, even if an open air environment could be construed as a building, Plaintiff would nevertheless be authorized to possess a firearm. This is for two reasons: 1) Plaintiff's possession would be authorized by Congress' exception to the general prohibition as provided by 18 U.S.C. §930(d)(3), and 2) Congress deliberately removed the authority of the Park Service and Wolf Trap to prohibit firearm possession by the enactment of 16 USC § 1a-7b(b).

**A.     The Lawn seating area and Adjacent Open Areas of the Filene Center are not a "Federal Facility" because it is not a "Building or Part Thereof"**

As Defendants' Dex 1, attachment B clearly shows, the Filene Center is composted of two parts: a covered theater structure, and an open air environment. The lawn seating area is within the open air environment. Additionally, there is a sizable adjacent open area containing at least some pavement. Dex 1, attachment B also shows, there is a delineation between the lawn seating area and the covered theater area. Notably, the lawn seating area and adjacent open areas contains no roof or covering of any kind; it is exposed to the elements. Also unlike the covered theater area, the lawn seating area has no permanently installed seating.

Further, the indoor and outdoor portions are physically separated by the paved pathway and portals which form the entrance of the covered theater. This physical delineation from one area to the other marks the boundary of where the "building or part thereof" begins and ends.

Defendants err in contending the lawn seating and adjacent open portions of the Filene Center are a part of the building. Contrary to Defendants' position, they are plainly not "an essential portion or integral element" of the building. As a hypothetical, if for some reason the lawn seating area was unusable for a particular event, no one using standard colloquial speech would say that the "building" was unusable. In an alternative hypothetical, if the covered theater were unusable for patron seating, the lawn seating area would remain intact for seating, and the immediate adjacent open areas would likewise be suitable for their purposes. It is therefore clear that any event that impacted the one would not necessarily impact the other; this is because they are distinct and separate components and can function independently of each other.

At least because there is a paved pathway and entrance portals that separate the lawn from the covered theater seating area, the *Rodriguez* case is not readily distinguishable as Defendants suggest. Additionally, the arguments made by the government in the *Rodriguez* case parallel the arguments made by the Defendants in the instant case. Quoting:

> [The government argues that the parking lot] is separated from public access by physical barriers, such as fences and razor-wire, and posted notices identifying it as [federal] property and federal employees are regularly present on the lot for the purpose of performing their duties .... [The government] argued generally that a broad meaning should be given to the definition of "Federal facility," without distinguishing its parts, in order to include the employee parking lot. Thus, while Mr. Rodriguez emphasizes the limits of the "building" term of the definition of "Federal facility", the government can be understood to be stressing the expansiveness of the "part of term. According to the government, it would be consistent with the purpose of § 930 to broadly construe the definition of "Federal facility" to include the employee parking lot because it is part of the PDC.

*U.S. v. Rodriguez*, 460 F. Supp. 2d 902, 908 (2006). As in the *Rodriguez* case, Defendants here attempt to make something that is not part of a building to be so. Defendants attempt to stretch the statue beyond its meaning to meet their desired policy outcome, even after Congress explicitly removed from the Park Service such policy discretion in the area of firearms

4

prohibition (*See, infra* Section 1(c) of this memorandum). By failing to "distinguish its parts" when distinguishment is the most natural understanding (both by the paved path which provides a physical delineation, and the fact that one is a covered structure and the other is not which provides a structural delineation), the government attempts the same boot-strapping argument here as was soundly rejected in *Rodriguez*.

Additionally, 18 U.S.C. § 930 makes clear that a "building or part" does not include open air environments, even when surrounded by a fence. Again, quoting from *Rodriguez*:

> Even if it were found, in isolation, that the term "building" is ambiguous as to whether it includes a parking lot, the statutory context read as a whole confirms the narrower interpretation. Section 930 also provides:
>
>> Nothing in this section limits the power of a Court of the United States to punish for contempt or to promulgate rules or orders regulating, restricting, or prohibiting the possession of weapons within any building housing such Court or any of its proceedings, *or upon any grounds appurtenant to such building.*
>
> 18 U.S.C. § 930(f) (emphases added). This subsection clearly distinguishes a "building" from the "grounds appurtenant" thereto, a distinction that is does not make sense if the meaning of "building" already includes appurtenant property such as grounds and parking lots. This clear language demonstrates that Congress did not intend the term "building" to include open, unenclosed spaces such as appurtenant grounds or parking lots. Congress knew how to draft language to include grounds and other open, unenclosed spaces when it desired to and it evidently did not desire to in § 930(g)(1).

*Rodriguez*, 460 F. Supp. 2d at 912 (emphasis and comment in original). Substituting "lawn seating area" for "parking lot" in the above analysis leads to the same conclusion. Merely fencing in an open area was insufficient to transform an open air environment into part of a building in *Rodriguez*, and it is likewise insufficient here. Congress knew and recognized the differences between a building and open air environments; the Court must respect the choices that Congress has made.

Black's Law Dictionary defines a building as "[a] structure with walls and a roof, esp. a permanent structure." Black's Law Dictionary, 8th ed. (2004). Decisions defining "building" for the purpose of criminal statutes commonly include the elements of walls and a roof and/or enclosure. *See* Pinkney v. United States, 380 F.2d 882, 885 (5th Cir.1967). A "part" of a building could arguably be an detached annex, a particular room, an attic, a basement, or one of the structural elements of a building (wall, roof, pillars, a foundation, or seats). But the "ground appurtenant to such a building" is an open air environment which has no structural elements and is therefore not a building or part thereof.

In summary, 18 U.S.C. § 930 does not apply to the lawn searing area and adjacent open areas of the Filene Center in the first instance. The statute does not bar the possession of firearms in all "Federal Facilities" without qualification. The term "Federal Facilities" has been defined by Congress to include only a "building or part thereof". Since an open air environment is neither a building nor does it have an indicia of being a building (any structural elements), the Court should stop its analysis here.

B. **The "Lawful Purposes" Exception Allows Firearms to Be Carried Into The Lawn Seating and Adjacent Open Areas of the Filene Center**

Even if the definition of building could be stretched to include an open air environment, Plaintiff would nevertheless be permitted to possess a firearm in the lawn seating area of the Filene Center. This is because Congress when making its policy choices did not ban possession of firearms under all circumstances and for all purposes. Instead, Congress created several exceptions in order to carefully respect the balance between the relevant competing considerations.

18 U.S.C. § 930(d)(3) provides that a person may possess a firearm within the structure of a federal building other than a Court building[1] if that person is otherwise "lawful[ly] carrying ... incident to hunting or other lawful purposes".

Defendants concede that Plaintiff would be "lawful[l]y carrying firearms at Wolf Trap under the first part of § 930(d)(3)". Defs.' Mem. Summ. J. 18 n. 6. This being the case, Plaintiff moves onto the second part of the analysis.

With respect to the question of the meaning of "incident to", Defendants remind the Court that Courts should "give effect, if possible, to every clause and word of a statue". Defs.' Mem. Summ. J. 15. This is true, but the Court may not rewrite the statute to substitute a stronger, more limiting term where Congress has chosen a more open term by the process of its deliberative choices.

The term "incident" means "something that occurs casually in connection with something else" and "an occurrence of seemingly minor importance". *See* Dictionary.com, *available at* http://dictionary.reference.com/browse/incident (last accessed August 9, 2012). This is its standard colloquial meaning. When someone remarks that something happened "incidentally", they mean that something happened contemporaneously in time but otherwise logically removed with whatever other event is the principle topic at hand. Defendants want this Court to re-write "incident to" to mean "dependent on", "necessitated by", or "required by"; this is not the language Congress chose.

The case Defendants cite is distinguishable in four respects. First, in *United States v. de la Cruz-Bancroft*, 2010 WL 8752034 (D.N.M. Jan. 4, 2010), the criminal defendant was undeniably within the confines of a building. That fact is easily distinguishable here. Second, the

---

[1] Federal Court buildings are covered under §930(e). § 930(d)(3) only provides an exception to §930(a). There is no parallel exception similar to §930(d)(3) modifying §930(e).

criminal defendant in *de la Cruz-Bancroft* obtained entrance to the federal building by means of a fraudulent identification that was designed to make him appear to be a government agent. *de la Cruz-Bancroft* at 1. By committing fraud by using false ID and entering the building under false color of authority, the criminal defendant in *de la Cruz-Bancroft* was not engaged in a "lawful purpose", and so was ineligible to invoke the protections of § 930(d)(3). Third, the Federal Facility at issue in *de la Cruz-Bancroft* was not owned or operated by the National Park Service; the building at issue was operated by another agency. Unlike some other agencies to which Congress has provided supplemental authority which could in those cases arguably allow for those agencies to engage in firearms regulation[2], Congress has in fact specifically denied to Defendants the authority to regulate in the area of firearms possession (*See, infra* Section 1(c) of this memorandum). Fourth and finally, the legal finding by the Court in *de la Cruz-Bancroft* is totally conclusionary. The district Court in *de la Cruz-Bancroft* states that what "incident to" must be interpreted, and then answers the question within two sentences, without any intervening reasoning or analysis, and citing no precedent of any kind. It is therefore completely unpersuasive. When compared with the opinion in *Rodriguez*, which provides detailed analysis relevant to the issues at hand, it is clear this Court should dismiss the views of the Court in *de la Cruz-Bancroft*, and only rely on the reasoned, articulated views of the Court in *Rodriguez*.

Defendants then attempt to use the fact that the 18 U.S.C. § 930 protects hunting to narrow the statue to those "lawful purposes are those that depend on the *use* of a firearm". Defs.'

---

[2] For example, the United States Postal Service has banned firearms anywhere on its property via 39 C.F.R. §232.1(l), using the purported authority of 18 U.S.C. §3061(c)(4). This regulation did not exist at the time *Rodriguez* was decided, which is why it is not mentioned by that Court. Defendants used to have a similar formal regulation in 36 C.F.R. §2.4, but Congress stripped Defendants of their authority to promulgate such regulations via 16 USC §1a-7b(b). The USPS regulation is presently being challenged in Bonidy v. United States Postal Service, United States District Court for the District of Colorado, Civil Action No. 10-cv-02408-RPM, but that challenge relies on Constitutional grounds that are not raised here.

Mem. Summ. J. 17 (emphasis added). This is incorrect for two reasons. First, the question at hand is not the ability to use a firearm, but the ability to possess it. Plaintiff has the right under both state law and federal law to possess a firearm under a wide range of circumstances. By comparison, the ability to use a firearm by discharging is very limited by both state and federal law. Second, the United States enjoys a proud hunting heritage. While Congress could have simply written "any lawful purpose" and achieved the same result, given our hunting heritage it is not surprising that Congress wanted to make special mention of the rights of hunters in order to ensure the protection of that interest.

Finally, Defendants attempt to shoehorn their preferred policy preference into the federal statute by arguing that the most natural reading of the exception of 18 U.S.C. § 930(d)(3) would swallow the prohibition articulated in 18 U.S.C. § 930(a). That Congress chose to enact a law with a significant carve out is neither unusual nor unprecedented. Defendants argue the law reflects a single Congressional purpose: "to protect Federal employees and other around them from violence". Defs.' Mem. Summ. J. 18. Instead, the most natural reading of 18 U.S.C. §930 reflects a balance between competing policy considerations: ensuring the orderly administration of federal property on the one hand, and the protection of rights of ordinary law abiding citizens to peacefully possess firearms on the other. Defendants attempt to write this balance out of the statute to reflect a single interest which the Government would have the ability to promote without restriction is not consistent with the policy choices Congress has made.

### C. Congress has Explicitly Denied the Park Service the Authority to Regulate to Prohibit the Possession of Firearms

As noted in section IV of Defendants' recitation of the undisputed facts, for more than a quarter century starting in 1983, the Park Service took the position that it had the unilateral authority to prohibit firearms, not only within facilities, but indeed anywhere on its land.

Meanwhile, the several states began changing their laws to provided more citizens the ability to obtain a concealed carry permit. In 1986, only 9 states provided "shall issue" concealed carry permits or were unrestricted, 26 provided them on a discretionary basis ("may issue"), and 15 stated denied them all together ("no issue"). By 2009, these numbers had changed to 39 states providing "shall issue" concealed carry permits or were unrestricted, 9 "may issue", and 2 "no issue". *See* www.gun-nuttery.com/rtc.php (last accessed August 9, 2012). As of December 31, 2011, the Government Accountability Office estimates there are at least 8 million active permits to carry concealed handguns in the United States. *See* http://www.gao.gov/assets/600/592552.pdf executive summary (last accessed August 9, 2012).

Because of the extent of National Park land[3] and the growing number of permitted citizen lawfully possessing firearms, Congress recognized the policy position of the National Park service was increasingly untenable. On May 22, 2009, Congress enacted a law that strips the Department of Interior (and, as a specifically enumerated inferior entity, the National Park System) from regulating in the area of firearms possession. Quoting the relevant section:

> The Secretary of the Interior shall not promulgate or enforce any regulation that prohibits an individual from possessing a firearm including an assembled or functional firearm in any unit of the National Park System or the National Wildlife Refuge System if—
> **(1)** the individual is not otherwise prohibited by law from possessing the firearm; and

---

[3] Currently, the National Park Service maintains 397 areas covering more than 84 million acres in every state (except Delaware). *See* http://www.nps.gov/faqs.htm (last accessed August 9, 2012). National Park land represents approximately 3.5% of the total land area of the United States.

10

  **(2) the possession of the firearm is in compliance with the law of the State in which the unit of the National Park System or the National Wildlife Refuge System is located.**

16 U.S.C. § 1a-7b (b). This law went into effect February 22, 2010. This law by its explicit terms changed what was before a singular national policy into one that defers to and tracks state law. The firearms laws of the several states are complicated, and where a person can and cannot possess a firearm even with a permit varies substantially from state to state. While recognizing this, the United States has made the policy choice to defer any restriction of the right to possess a firearm on the federal land maintained by the Park Service to the discretion of each individual state. Whether or not it is wise of the federal government to relinquish its sovereign authority to regulate in the national parks by deferring to the states is a decision solely within Congress' discretion, and this Court should not change this policy choice.

  Wolf Trap is located with the Commonwealth of Virginia. Notably, Defendants cite no Virginia law barring the possession of a firearm in a national park. Indeed, this is because there is none, and Virginia similarly does not forbid the possession of concealed firearms in its own state parks. Likewise, whether or not it is wise of Virginia to allow firearms either in its own parks or in national parks is a decision within the state General Assembly's discretion, and this Court lacks any authority to modify or affect state law.

  For these reasons, the Court should grant summary judgment in favor of Plaintiff, holding 1) that under the plain language of 18 U.S.C. § 930, the lawn seating area and adjacent open areas are not a "Federal facility", 2) even if it was, the exception of 18 U.S.C. § 930(d)(3) is applicable, or 3) that under the plain language of 16 U.S.C. § 1a-7b, the National Park service lacks any ancillary or supplemental authority to regulate in the area of firearms possession.

## II. TO THE EXTENT 18 U.S.C. § 930 IS AMBIGUOUS, THE COURT SHOULD NOT DEFER TO DEFENANT'S INTERPRETATION OF THE STATUTE SINCE THE STATUE IS ONE OF GENERAL APPLICABILTIY FOR WHICH THE NATIONAL PARK SERVICE HAS NO SPECIAL EXPERTISE OR AUTHORITY TO ADMINISTER

If 18 U.S.C. § 930 is in any respect unclear, the Court should provide a restrictive reading of the statute's prohibitions and an open reading of its exceptions. §930 is no mere civil statute to which a duly vested agency may further craft and define to fulfill its essential purposes; instead, is a criminal statute. Therefore, the Court should apply the rule of lenity in resolving any potential ambiguity. "[The rule's] function is to ensure that fair warning is given of what the law requires, that no person be at risk of criminal sanction and opprobrium unless *Congress clearly and unmistakably* defines the actions prohibited or required." *Rodriguez*, 460 F. Supp. 2d at 911 (emphasis added). Congress has not clearly and unmistakably made Plaintiff's desired conduct illegal, nor delegated responsibility for administration of § 930 to the Park Service. The Court should grant no deference to the Park Service's current desired interpretation.

### A. Defendants' Policy of Prohibiting Firearms within the Lawn Seating and Adjacent Open Areas is not Eligible for *Skidmore* Deference

In *Skidmore*, the Department of Labor provided an interpretive regulation of a section of the Fair Labor Standards Act, namely, whether or not waiting time could be included in the category of working time. *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944). It is clear on its face that if the Fair Labor Standards Act was to be found to be within the interpretive jurisdiction of any federal agency at all, the Department of Labor would certainly be it. Recognizing this, the Supreme Court in *Skidmore* properly viewed the interpretations of the Department of Labor with the respect due to the experienced experts in that department had with labor issues. That situation

is completely incompatible here. 18 U.S.C. § 930 is not a statute which in any substantive way directly relates to the Park Service or the Department of the Interior as a whole.

As noted previously, for a quarter century Wolf Trap like all national parks maintained a flat firearms ban. Accordingly, no one within at the National Park Service or Wolf Trap has any special expertise on the subject of firearms regulation. There is no basis to grant any special deference to Wolf Trap since they lack any particular expertise with respect to a general law for which they have no special authority to administer. Interpretations by agency "are entitled to great weight ... where the interpretations involve contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion". United States v. American Trucking Ass'ns, 310 U.S. 534, 549 (1940). Because neither the National Park Service nor Wolf Trap are delegated with administration of § 930, *Skidmore* deference is inapplicable.

Even if *Skidmore* were applicable here, this Court has the ability to reach its own independent judgment. *Skidmore* envisions the Courts rather than the agencies as the primary interpreters of statutes. *See*, e.g., John F. Manning, Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules, 96 Colum. L. Rev. 612, 686–88 (1996) (describing *Skidmore* as "a nonbinding version of deference" from "a Court exercising independent judgment"). Because Wolf Trap's policy is a interpretive rule made without conforming to the formal rule making process, the Court may replace its judgment for that of the agency. *See* Batterton v. Francis, 432 U.S. 416, 425 n. 9 (1977) ("a Court is not required to give effect to an interpretative regulation").

Defendants argue that "Congress implicitly left it up to each agency to designate all 'Federal Facilities' where firearms were to be prohibited", citing 18 U.S.C. § 930(h). Defs.' Mem. Summ. J. 19. Congress did not grant federal agencies the authority to "designate" what a

13

federal facility is; instead, Congress provided its own definition in 18 U.S.C. §930(g). §930(h) merely requires all federal agencies to post notice "at each public entrance to each Federal facility". While lack of notice is definitive indication that a place is not a location where possession of firearms is prohibited, contrary to Defendants' desired interpretation, this in no way allows the agency to create a facility out of whole cloth where it does not exist by "designation".

Next, Defendants state that "Congress recognized in the organic statute of the NPS that the agency is in the best position to make rules for the use of management of the parks, monuments, and reservations under the jurisdiction of the National Park Service", citing 16 U.S.C. § 1 & 3. While generally accurate, this blanket proposition ignores the careful and deliberate carve out denting the National Parks the authority to regulate in the area of firearms possession provide for by 16 U.S.C. §1a-7b(b).

Certainly, Wolf Trap may have features that require an independent determination by its staff. Questions like how large any stage should be, what materials should be used and what architecture it should have, how many patrons should be allowed within the lawn seating area, and what kind of seats to install, are all within the authority of Wolf Trap as long as its decisions are not arbitrary or capricious. However, regulations regarding the lawful and peaceful possession of firearms have been excluded from this general authority. Under the Administrative Procedures Act, the Courts have the duty to "hold unlawful and set aside agency action ... found to be ... in excess of statutory jurisdiction, authority or limitations, or short of statutory right". 5 U.S.C. § 706. The Court should not provided deference to an interpretation of the Defendants which seeks to get back that which Congress has expressly taken away.

**B.      The Court should use the Most Reasonable Reading of §930 so as to Promote the Careful Balance of Interests Selected by Congress, and Doing so will not Impact the Ability of Wolf Trap to Fulfill its Mission**

While Defendants may be correct that is "interpretation merits deference to the extent that the interpretation has the power to persuade" (Defs.' Mem. Summ. J. 21), this is equally true of Plaintiff. As noted above, Defendants should be provided no special deference because they lack any particular grant of authority and they lack any particular relevant expertise with respect to firearms regulation.

Defendants first bring the Courts attention to their unbroken track record of interpretation. Defs.' Mem. Summ. J. 22. However, as noted by Defendants, this track record only extends back to February 21, 2010 & was only formally memorialized on April 16, 2012 - about four months ago. These facts show that this policy, rather than etched in stone from time immemorial and long since acquiesced to by the public at large, is a brand new policy that since now finally and officially memorialized is only just now ripe for formal adjudication. Defendants' "consistency", given the shortened time frame, is not persuasive.

As to furthering the purpose of the statue, Defendants assume a unilateral and singular purpose. As noted elsewhere in this memorandum, the purpose instead represents a balance. Defendants attempt to circumvent this balance by citation to a statement of the Senate Judiciary Committee made in 1988. Defs.' Mem. Summ. J. 22. Because this comment was made by a committee, it does not rise to the level of forming an official policy statement of the entire Senate, let alone of Congress.[4] It is not unusual for Congress to include such statements of

---

[4] Additionally, the Senate Judiciary Committee's statement cited by Defendants combines elements of § 930(a) (which addresses most federal property) and § 930(e) (which addresses Court property separately). The exception provided by §930(d)(3) only affects section §930(a). There is no parallel exception similar to § 930(d)(3) modifying §930(e). Therefore, the statement of the Committee appears to provide no particularized guidance to the issues at hand.

purpose as part of a law's text.[5] As there is no Congressional policy statement connected to §930, the Court must instead rely on the statutory texts at issue in this case, which rather than reflecting a singular policy objective, reflects a balance of competing concerns which recognizes the ability of law abiding citizens to possess a firearm while engaged in lawful activity.

Contrary to Defendants' concerns, allowing Plaintiff to possess a concealed firearm within the lawn seating area will not prevent Wolf Trap's ability to continue to fulfill its core mission of providing artistic enrichment and educational programs to the community. At the risk of stating the obvious, concealed carry is <u>concealed</u>. No one will know that Plaintiff is in possession of a firearm, and accordingly, no one's enjoyment will be disrupted.

By way of illustration, Virginia law allows permitted ordinary citizens to carry concealed firearms almost everywhere they go, including state parks, state forests, and even into the General Assembly building in Richmond. *See* http://www.vcdl.org/static/ccw.html (last accessed August 9, 2012). Yet, even though according the Government Accountability Office 274,000 residents of Virginia have a concealed carry permit, the citizens of Virginia continue to conduct their daily business without disruption. *See* http://www.gao.gov/assets/600/592552.pdf p. 79 (last accessed August 9, 2012) (additionally noting this is about 1.8% of the entire Virginia population). However special Wolf Trap might be in other respects, there is simply no reason to suspect some kind of disruption would take place at Wolf Trap when this is not the experience anywhere else within the state.

---

[5] As one example in the context of firearms law, *see* section 101 of the Gun Control Act of 1968, Pub.L.90-618, which states that "Congress hereby declares ... it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to ... possession [of] firearms ... appropriate to the purpose of ... personal protection, or any other lawful activity".

Neither will Plaintiff's peaceful possession of a concealed firearm prevent Wolf Trap from meeting the obligations of a "Safety Clause" in any contract.[6] As Defendants themselves go to some lengths to point out, Wolf Trap has a variety of resources at its disposal. These include a US Park Police security guard, Park Rangers, and US Park Police officers, both uniformed and plain clothes (Defs.' Mem. Summ. J. 6-7). Though Defendants don't specify, one would presume that if the plain clothes Park Police carry firearms or other weapons, they do so concealed. If this is the case, this would further illustrate Plaintiff's point; since no one is the wiser, no one's enjoyment is disrupted. In any event, Defendants have sufficient security at their disposal to meet any contractual requirements.

Further, Defendants worry about someone with malicious intent concocting a "legitimate" reason to bring a firearm into the lawn seating area of the Filene Center. Defs.' Mem. Summ. J. 18. However, it is clear on its face that person engaged in criminal conduct is not present for a "lawful purpose", and would be unable to invoke the protections of §930(d)(3). Additionally, a person with malice and criminal intent to engage in some kind of gun crime is not going to be deterred merely by the "no guns allowed" sign presently on display at the gates of the Filene Center. Without actually screening every patron, there is no way that Wolf Trap can

---

[6] Defendants specify that the "Safety Clause" refers to originally number pages 9 of 17 (IV.A) and 12 of 17 (V.H.1) of Dex 2, Attachment 2. Defs.' Mem. Summ. J. 6. The first clause (IV.A) requires Promoter to provide "adequate security". Plaintiff does not challenge the ability of the Promoter to provide security personnel. The second clause (V.H.1) provides that the performer is excused from performance if there is a "danger of death or injury or civil strife of any kind or to any threat or outbreak of violence". Plaintiff's desired conduct does not fall into any of these categories. Additionally, the entirety of section IV is subject to the Foundation Rider, paragraph 14. This paragraph provides that "Security of the Filene Center is maintained by the United States Park Police at all times." Plaintiff does not challenge the authority of the Park Police to engage in valid law enforcement actions. Therefore, it is unclear in what way Defendants are arguing that Plaintiff's claim for relief if granted would conflict with the "safety clause".

prevent a criminal who has already formed the *mens rea* to commit a gun crime from entering the lawn seating area of the Filene Center. The only people prevented from possession of a firearm are the peaceful and law abiding.[7]

Finally, there is no reason to conclude that Defendants would have difficulty adopting to a decision in Plaintiff's favor. Defendants can simply relocate their signs from their current position at the portals forming the barrier between the open air environments and the covered seating area. No other changes appear required.[8]

In sum, the Court should consider that the choices Congress made in 18 U.S.C. § 930(d)(3) and 16 U.S.C. § 1a-7b(b) reflect a legislative policy determination that justifies Plaintiff's position.

---

[7] It is well established that Defendants have no affirmative duty to protect Plaintiff (or any other specific individual patron). *See* DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989) & Warren v. District of Columbia, 444 A.2d 1 (D.C. Ct. of Ap., 1981). Since Defendants have no affirmative duty, each patron is individually responsible for their own safety.

[8] Defendants argue that if Plaintiff is correct then "stepping into or out of a bathroom inside the gates of the Filene Center could mean the difference between violating and not violating §930". Defs.' Mem. Summ. J. 24. This argument is in conflict with their concession that carrying a firearm "incident to" would allow a person to "use a restroom while hunting". Defs.' Mem. Summ. J. 17. If Plaintiff's desired conduct is, like hunting, a "lawful purpose", it would be arbitrary and capricious to conclude that using the bathroom is ok in one instance, but not the other.

## CONCLUSION

For the foregoing reasons, the Court should find that the prohibition of firearms within the lawn seating area and the adjacent open air areas is not consistent with 18 U.S.C. § 930 and 16 U.S.C. § 1a-7b, that the interpretative regulation prohibiting concealed firearms within these areas is in violation of the Administrative Procedures Act, and grant summary judgment in favor of the Plaintiff.

Respectfully Submitted,

Kurt Mueller
*Pro Se*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2012, I will paper file the forgoing with the Clerk of Court, and will mail the document by U.S. mail to the following address:

Lauren A. Wetzler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2011 Jamison Avenue
Alexandria, Virginia 22314

_____
Kurt Mueller
*Pro Se*