**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| KURT MUELLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES NATIONAL PARK )<br>SERVICE, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:12cv632 (CMH/TCB) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendants United States National Park Service ("NPS"); Jonathan Jarvis, Director of the National Park Service, in his official capacity; Karen Pittleman, Director, Wolf Trap National Park for the Performing Arts ("Wolf Trap"), in her official capacity; and Duane Erwin, Chief Ranger of Wolf Trap, in his official capacity (collectively, "Defendants"), through undersigned counsel, respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 10).

**INTRODUCTION**

Defendants showed in their summary judgment motion that NPS has properly designated the Filene Center theater at Wolf Trap as a "Federal facility" where firearms and other dangerous weapons are prohibited pursuant to 18 U.S.C. § 930. Plaintiff's cross-motion for summary judgment concedes the essential facts of Defendants' motion but reaches the opposite legal conclusion. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem.") 2 ("Plaintiff adopts, with one exception [relating to a statement of law], the statement of undisputed facts as provided in Defendants' memorandum . . . .").

For the reasons that follow, and those in Defendants' summary judgment memorandum, the Court should find that § 930 unambiguously permits the prohibition of firearms from the Filene Center – a unique theater whose indoor and outdoor spaces function as a single, integrated unit. Alternatively, even if the Court were to conclude that the language of § 930 is in some way ambiguous, it should defer to Defendants' well-informed interpretation of how the statute should be applied to Wolf Trap.

## ARGUMENT

### I.  THE ENTIRE FILENE CENTER IS A "FEDERAL FACILITY" AS THAT TERM IS UNAMBIGUOUSLY DEFINED IN 18 U.S.C. § 930.

Plaintiff's primary objection to the designation of the whole Filene Center as a "Federal facility" boils down to the mistaken contention that because "the lawn seating area and plaza are open air environments," Pl. Mem. 3, they cannot qualify as a "building or part thereof," 18 U.S.C. § 930(g)(1). In Plaintiff's view, firearms may only be prohibited from structures that have "walls and a roof"—that is, the structure of the Filene Center that contains the House, stage, and offices, and the Main Gate Structure. Pl. Mem. 6. In focusing exclusively on the appearance of the Lawn and Plaza to the exclusion of their usages, Plaintiff's argument ignores that the Filene Center is a unique facility whose "open air environments" are as integral to the function and design of the theater as its covered structures. *See* Def. Mem. 12-14. Accordingly, they qualify as "part" of a Federal government building under 18 U.S.C. § 930(g)(1).

The Lawn and Plaza are designed to function in concert with the covered structures to allow the entire Filene Center to work as a theater. Specifically, the outdoor amphitheater known as the Lawn is designed to allow patrons to watch performances that occur on the stage inside the covered structure that contains the House seating, while still enjoying their natural

surroundings.[1] *See* Defendants' Exhibit 1 to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("DEX 1"), ¶¶ 7-9. The paved area known as the Plaza, which lies between the Main Gate structure and the Lawn, serves, among other purposes, as spillover seating, and to allow patrons to access the restrooms, food services, and gift shop of the Main Gate structure. *Id.*, ¶ 10. In this respect, the Main Gate and Plaza together serve as the lobby and front-of-house areas would in a traditional indoor theater. *Id.* Thus, regardless of whether only some parts of the Filene Center have "walls and a roof," Pl. Mem. 6, all of the areas inside the fenced and gated enclosure of the Filene Center work together to enable the facility to operate. Def. Mem. 14 (quoting dictionary definition of "part" as "an essential portion or integral element"). For this reason, the entire Filene Center qualifies as a Federal facility.

Plaintiff posits two hypotheticals to suggest why the Lawn and Plaza are, in his view, not essential portions or integral elements of a building, but both rely on a flawed premise. Plaintiff theorizes that because the House seating might remain usable even if the Lawn seating were not, the Lawn cannot be considered an "essential portion or integral element" of a building because "they are distinct and separate components and can function independently of each other." *See* Pl. Mem. 4. But the building of which the Lawn is part does not contain only the House seating; it also contains the stage. And, if the stage were unusable, the Lawn would, indeed, be unusable for its purpose of seating patrons during performances. Thus, the Lawn does not function independently from the building of which it is a part. Plaintiff further fails to appreciate that even if the House and Lawn *could* operate separately, they are not designed to do so. From its

---

[1] Although the Lawn does not have walls or a roof, Plaintiff errs in stating that it has "no structural elements." Pl. Mem. 6. In fact, it has cement staircases, railings, and lights along aisles that cut through the Lawn as well as a sound booth in the Lawn's top center to control and monitor sound for that part of the facility. DEX 1, ¶¶ 9, 13.

inception, the Wolf Trap's "plan of development include[d] not only the auditorium . . . but also a natural amphitheater," H.R. Rep. No. 89-1821 (Aug. 9, 1966), *reprinted in* 1966 U.S.C.C.A.N. 3455, 3455. They were designed to function together, and they still do today. DEX 1, Att. C.

Although Plaintiff tries to suggest that the *Rodriguez* case is comparable to this one, for the reasons already identified in Defendants' opening memorandum, it is clearly distinguishable. *See* Def. Mem. 13-14. Plaintiff emphasizes that "there is a paved pathway and entrance portals that separate the lawn from the covered theater seating area," Pl. Mem. 4, but that pathway is nothing more than an aisle along which patrons walk to take their seats either in the House or on the Lawn. It is nothing like the "public street and adjacent public sidewalks" that divided the postal building and fenced parking lot in *Rodriguez*. *United States v. Rodriguez*, 460 F. Supp. 2d 902, 905 (S.D. Ind. 2006).

Nor is it relevant that 18 U.S.C. § 930 contains a separate provision for courthouses that includes language concerning "grounds appurtenant" to court buildings. 18 U.S.C. § 930(f). Whereas "appurtenant" grounds are "auxiliary" or "accessory" to the building they accompany, *see* Merriam-Webster On-line Dictionary, *available at* http://www.merriam-webster.com/dictionary/appurtenant (last visited August 15, 2012), as explained above, a "part" of a building is an area that is "essential" or "integral" to that building, *id. at* http://www.merriam-webster.com/dictionary/part. The Lawn and Plaza areas are not merely "grounds appurtenant" to buildings, like parking lots; rather they are integral parts of the buildings both in design and function. Indeed, Wolf Trap has not designated parking lots that are appurtenant to the Filene Center as Federal facilities. It has thoughtfully prohibited firearms from the Filene Center itself—just 4.564 acres of the 117 acres that comprise Wolf Trap—because the Filene Center unambiguously constitutes a Federal facility. DEX 1, ¶ 6.

4

## II.     THE "LAWFUL PURPOSES" EXCEPTION DOES NOT ALLOW PLAINTIFF TO CARRY A FIREARM INTO A THEATER

Plaintiff has identified no lawful purpose requiring carrying a firearm into the Filene Center that could allow him to invoke the exception contained in 18 U.S.C. § 930(d)(3). Plaintiff takes issue with how Defendants define the term "incident to" in § 930(d)(3), but the very website to which Plaintiff directs this Court includes "related (to) or dependent (on)" as a leading definition of the adjectival form of the word "incident," *see* Dictionary.com, *available at* http://dictionary.reference.com/browse/incident (quoting "World English Dictionary"), just as Defendants' dictionaries do.  *See* Def. Mem. 16.  Plaintiff fails to identify any purpose for carrying a firearm in the Filene Center that could depend on having a firearm; "attending a performance"—the only purpose identified in any of Plaintiff's filings—clearly does not. Compl. ¶ 20.

In *United States v. de la Cruz-Bancroft,* 2010 WL 8752034 (D.N.M. Jan. 4, 2010), the district court properly gave meaning to the term "incident to" when it held that "the possession of the firearm must be not only lawful, but also must be for a lawful purpose that is related to the federal facility."  *Id.* at *2.  Plaintiff attempts to distinguish *De la Cruz,* but none of the factual distinctions on which he relies are relevant to how the Court construed the statute's plain language of the term "incident to."  Moreover, the fourth distinction—that Congress has supposedly divested NPS of the authority to prohibit firearms from Wolf Trap, whereas the United States Postal Service retains authority to prohibit firearms from its facilities—is incorrect for the reasons discussed below.  *See infra* Part III.

Plaintiff also takes issue with the significance Defendants attach to the term "hunting" in § 930(d)(3), speculating that Congress chose to include this word not to exemplify the statute's

meaning, but rather because it wanted to celebrate our nation's proud hunting heritage. Pl. Mem. 9. As explained in Defendants opening brief, "the one example Congress provided in § 930(d)(3) – 'hunting' – confirms that 'lawful purposes' are those that depend on use of a firearm." Def. Mem. 17. Plaintiff objects to Defendants' choice of the word "use," arguing that "the question at hand is not the ability to use a firearm, but the ability to possess it." Pl. Mem. 9. Plaintiff is correct that it would have been preferable for Defendants to use the word "possession" instead of "use," but Defendants' point remains regardless of which word is chosen: Congress's decision to identify "hunting" as an example of a lawful purpose confirms that it had in mind purposes which necessitate having a firearm at one's disposal. Attending a performance is not such a purpose.

Finally, Plaintiff fails to rebut Defendants' argument that his unbounded reading of the "lawful purpose" exception would "swallow the prohibition in § 930(a) generally prohibiting firearms and other dangerous weapons in federal facilities." *De la Cruz-Bancroft*, 2010 WL 8752032, at *3. If attending a performance would be an adequate purpose for bringing a firearm into a federal facility, it is hard to conceive of any purpose that would not.

### III. NPS HAS THE AUTHORITY TO DESIGNATE THE FILENE CENTER AS A FEDERAL FACILITY.

Plaintiff errs in suggesting that Congress, through 16 U.S.C. § 1a-7b(b), divested NPS of the power to designate Federal facilities under 18 U.S.C. § 930. To the contrary, Congress provided that the Secretary of the Interior may not promulgate regulations that prohibit individuals from possessing firearms in the National Park System where "the individual *is not otherwise prohibited by law* from possessing the firearm." 16 U.S.C. § 1a-7b(b)(1) (emphasis).

It is 18 U.S.C. § 930 that otherwise prohibits individuals from possessing firearms. [2] Plaintiff criticizes Defendants for citing no Virginia laws barring possession of a firearm in a national park, but there is no need to do so when *Federal* law itself makes possession of firearms in a Federal facility like the Filene Center unlawful.

* * *

In sum, in light of the plain text of § 930 and NPS's clear authority to designate Federal facilities, the Court should hold that Defendants are entitled to summary judgment.

**IV.    EVEN IF § 930 IS AMBIGUOUS, THE COURT SHOULD DEFER TO DEFENDANTS' INTERPRETATION OF THE STATUTE.**

For the reasons set forth in Defendants' summary judgment memorandum, even if the Court were to find some ambiguity in the language of 18 U.S.C. § 930, it should defer to Defendants' well-informed and well-justified interpretation of that statute.

Contrary to Plaintiff's contention, the rule of lenity does not call for construing any ambiguity in his favor. "The rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, — U.S. —, 130 S. Ct. 2499, 2508-09 (2010) (internal citations and quotation marks omitted); *see also Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.") There is no "grievous ambiguity" here. Consideration of the

---

[2] To be clear, NPS has not banned firearms from the Filene Center using 36 C.F.R. § 2.4, the regulation that previously prohibited firearms throughout Wolf Center. Instead, as the signs posted at the Filene Center show, firearms are now prohibited under 18 U.S.C. § 930 because the Filene Center is a Federal facility. DEX 1, ¶ 31.

statute's text and purpose show that Congress plainly intended § 930 to apply to Federal facilities like the Filene Center, in order to "protect federal employees . . . and others present" from violence on federal property. 134 Cong. Rec. S18360-02 (daily ed. Nov. 1988) (section analysis of the Judiciary Committee).

Rather than construing any ambiguity in Plaintiff's favor, the Court should afford *Skidmore* deference to Defendants' interpretation of § 930. *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944). That Congress did not charge any one agency with interpreting § 930 does not mean that NPS's interpretation is ineligible for *Skidmore* deference. While the Supreme Court has suggested in *dicta* that higher-level *Chevron* deference may be inappropriate where multiple agencies have promulgated policies under a particular statute, it has never indicated that lesser *Skidmore* deference would be unwarranted in such circumstances. *See Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 n.30 (1986) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984)). The Court has often held that even where *Chevron* deference is inappropriate, an agency's policy may nonetheless be entitled to *Skidmore* deference where the agency's position has the power to persuade.[3] *See, e.g.*, *Alaska Dept. of Env'l Conser. v. E.P.A.*, 540 U.S. 461, 488 (2004); *Washington State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003).

---

[3] It is unclear why Plaintiff cites *Batterton v. Francis*, 432 U.S. 416, 425 n. 9 (1977), for the proposition that "a Court is not required to give effect to an interpretative regulation," when this case does not concern a regulation. In any event, in the sentence after the one quoted by Plaintiff, the Court went on to provide that even if the Court is not *required* to give effect to such a regulation, "[v]arying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." *Id.* (citing, *inter alia, Skidmore,* 323 U.S. at 140).

It is hardly surprising that Congress left it to all agencies to implement § 930 with respect to their own unique facilities. Contrary to Plaintiff's suggestion, whether or not an agency has special expertise on the subject of firearms regulation is irrelevant for purposes of applying § 930. Rather, the expertise that *is* relevant to implementing that statute is knowledge of whether each of an agency's facilities qualifies as a "building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties." 18 U.S.C. § 930(g)(1). Such a determination requires the very same kind of detailed knowledge of the facility that Plaintiff concedes lies within Defendants' province. Pl. Mem. 14. ("Questions like how large any stage should be, what materials should be used and what architecture it should have, how many patrons should be allowed within the lawn seating area, and what kind of seats to install, are all within the authority of Wolf Trap . . . . )" As the declaration of Wolf Trap's Director, Karen Pittleman, illustrates, it is those who work on the ground at each facility that know best the unique characteristics of their facility and can best interpret the statute in relation to their facility. *See generally* DEX 1. Plaintiff boldly asserts that his views are entitled to the same deference as Defendants', but it is Defendants, not Plaintiff, who have the kind of "informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140.

Plaintiff posits what he believes to be the purpose of § 930, but he cites no legislative history to support his speculation. As noted in Defendants' opening memorandum, Congress clearly identified the purpose of the statute at the time it was enacted by explaining that "[t]he provision is intended to protect federal employees, witnesses, judges, and others present in places where the business of the federal government is conducted." 134 Cong. Rec. S17360-02 (daily ed. Nov. 10, 1988) (section analysis of Senate Judiciary Committee). Although Plaintiff

may believe that it would be safe for individuals to carry concealed weapons at Federal facilities like the Filene Center, that is not the policy choice that Congress made, and it is, of course, Congress's intent that this Court must carry out.

The remainder of Plaintiff's summary judgment memorandum contains speculation about the likely consequences of allowing concealed weapons into the Filene Center in contravention of § 930. For example, Plaintiff speculates that allowing weapons into the Filene Center would not compromise "Wolf Trap's ability to continue to fulfill its core mission of providing artistic enrichment and educational programs to the community." Pl Mem. 16. But the declaration of Ann McPherson McKee, Senior Vice President of Performing Arts and Education for the Wolf Trap Foundation, shows just the opposite. As Ms. McKee explains, based on her twenty-five years of experience negotiating contracts with performers, "if dangerous weapons, including firearms, were permitted in the Filene Center at Wolf Trap, the Foundation would be hindered in its ability to include a Safety Clause in future contracts, and some artists would exercise a Termination Clause under existing contracts." DEX 2, ¶ 9. Plaintiff takes issue with Ms. McKee's conclusion about the Safety Clause but has no answer to the concern she raises about the effect of the Termination Clause. Pl. Mem. 17 n.6. In any event, it is unclear what expertise Plaintiff has in the standards of safety artists expect when they contract to perform. It is hard to conceive of a more serious obstacle to the Congressionally-mandated mission of Wolf Trap than if it could not attract artists to perform there, or its artists cancelled their appearances.[4] *See* 16

---

[4] The need to secure artist contracts may explain why Jiffy Lube Live (formerly the Nissan Pavilion) in Bristow, Virginia, also bans weapons from its concert facility.
*See* http://www.ticketmaster.com/Jiffy-Lube-Live-tickets-Bristow/venue/172099 (last visited Aug. 21, 2012) ("NO weapons or recording devices are permitted."). Jiffy Lube Live presumably does so pursuant to Va. Code § 18.2-308(O), which allows private property owners to prohibit others from bringing firearms onto their property irrespective of whether they have a concealed weapons permit.

U.S.C. § 284 (defining Wolf Trap as "a park for the performing arts and related educational programs"); *see also* H.R. Rep. No. 89-1821 (Aug. 9, 1966), *reprinted in* 1966 U.S.C.C.A.N. 3455, 3455 (describing Wolf Trap's "primary purpose" as "that of providing a setting worthy of performances which will be scheduled for presentation there"). Accordingly, this Court should defer to the informed judgment of Defendants not only to carry out Congress' intent in enacting § 930, but also Congress' intent in creating a unique park for the performing arts.

As explained in Defendants' summary judgment memorandum, it should also do so to avoid absurd results and enforcement problems. *See* Def. Mem. 24 (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). Under Plaintiff's view of § 930, a patron who is seated at the front of the Lawn would be allowed to carry a firearm, whereas a patron who is seated in the last row of the House would not be, even though they are watching the same performance within just feet of each other. This is an absurd result that Congress would never have intended and that it is in this Court's power to avoid.

## **CONCLUSION**

For the foregoing reasons and those in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, the Court should find that the prohibition of firearms inside the Filene Center is consistent with 18 U.S.C. § 930 and grant summary judgment in favor of the Defendants.

        Respectfully submitted,

        NEIL H. MacBRIDE
        UNITED STATES ATTORNEY

By:     /s/
        Lauren A. Wetzler
        Assistant United States Attorney
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Telephone: (703) 299-3752
        Fax:  (703) 299-3983
        Email: lauren.wetzler@usdoj.gov

        COUNSEL FOR DEFENDANTS

OF COUNSEL:
Randolph J. Myers
Senior Attorney
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W. Room 5320
Washington, D.C. 20240

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 22, 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, and will mail the document by U.S. mail to the following non-filing user:

Kurt Mueller
251 S. Reynolds St., M117
Alexandria, VA 22304
*Plaintiff pro se*

               /s/
            Lauren A. Wetzler
            Assistant United States Attorney
            Justin W. Williams U.S. Attorney's Building
            2100 Jamieson Avenue
            Alexandria, Virginia 22314
            Telephone: (703) 299-3752
            Fax:   (703) 299-3983
            Email: lauren.wetzler@usdoj.gov
            Counsel for Defendants